## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. |
| v. | : | 15-CR-25 (JCH) |
| | : | |
| BRETT LILLEMOE, PABLO CALDERON, | : | |
| AND SARAH ZIRBES, | : | APRIL 18, 2016 |
| Defendants. | : | |

**RULING RE: LILLEMOE'S MOTION FOR BRADY MATERIAL (DOC. NOS. 85 & 86); CALDERON'S MOTION FOR DISCLOSURE OF SPECIFIC BRADY MATERIAL AND A BILL OF PARTICULARS (DOC. NO. 87); AND SARAH ZIRBES' MOTION TO COMPEL PRODUCTION OF UNREDACTED USDA MATERIALS AND TO REQUIRE DISCLOSURE CONCERNING "OTHER TRANSACTIONS" EVIDENCE (DOC. NO. 88)**

## I.     INTRODUCTION

Brett Lillemoe ("Lillemoe"), Pablo Calderon ("Calderon"), and Sarah Zirbes ("Zirbes") (collectively, "the defendants") are charged by Indictment with  one count of Conspiracy to Commit Wire Fraud and Bank Fraud, nineteen counts of Wire Fraud, one count of Bank Fraud, and one count of Money Laundering, in violation, respectively, of sections 1349, 1343, 1344, and 1957 of title 18 of the United States Code.  Indictment (Doc. No. 1) ¶¶ 1-54.  Calderon is also charged by the same Indictment with one count of making a False Statement, in violation of section 1001 of title 18 of the United States Code.  Id. ¶ 55-56.

The defendants have joined in each other's Motions to compel the production of evidentiary material that they contend falls within the United States' obligations under Brady v. Maryland, 373 U.S. 83 (1963); they have also sought a bill of particulars and have challenged the United States' proposed use of certain evidence as having constructively amended the Indictment or prejudicially varied the proof alleged in the Indictment.  See Lillemoe's Motion for Brady Material ("Lillemoe's Motion") (Doc. No. 85

(unsealed) & 86 (sealed)); Calderon's Motion for Disclosure of Specific Brady Material and a Bill of Particulars ("Calderon's Motion") (Doc. No. 87); Zirbes' Motion to Compel Production of Unredacted USDA Materials and to Require Disclosure Concerning "Other Transactions" Evidence ("Zirbes' Motion") (Doc. No. 88).

The United States opposed the Motion.  Government's Opposition to Defendants' Discovery Motions ("Opposition") (Doc. No. 93).

For the reasons set forth below, Lillemoe's Motion is **TERMINATED AS MOOT**; Calderon's Motion is **DENIED IN PART** and **TERMINATED AS MOOT IN PART**; and Zirbes' Motion is **DENIED IN PART** and **TERMINATED AS MOOT IN PART**.

## II.    BACKGROUND

The principal offense conduct charged in the Indictment consists of alterations the defendants allegedly made of certain documents necessary to obtain loan guarantees from a federal loan guarantee program.  Indictment ¶ 48.  The program, called the Export Guarantee Program ("GSM-102"), is part of the Commodity Credit Corporation ("CCC") and is administered by the Foreign Agricultural Service ("FAS"), both of which are divisions of the United States Department of Agriculture ("USDA").  Id. ¶¶ 18-26.  During discovery, the United States Attorney's Office ("USAO"), at the defendants' prompting, requested and received reams of documents concerning communications within the USDA regarding GSM-102 and transactions to which the defendants were parties.  See, e.g., Opposition at 2.  Though the United States did not comply with the court's scheduling order regarding the disclosure of these documents, the government has now disclosed to the defendants unredacted versions of all documents turned over by the USDA.

2

The Indictment alleges two transactions that would, if proven, give rise to criminal liability as overt acts of the alleged conspiracy.  Id. ¶ 48(B) & (C). However, the United States represented to the defendants in July 2015 that it intended to prove a variety of additional transactions, at least 15 of which did not directly involve the defendants at all ("non-defendant transactions").  See Memorandum in Support of Calderon's Motion ("Calderon's Memorandum") (Doc. No. 87-1) at 17-18.  The United States argues that these transactions are relevant insofar as they allege that the defendants used the same documents that supported the other companies' transactions: the documents at issue, the United States contends, may only be used once, and consequently their duplicative use constitutes another means, besides altering documents, of committing the crimes already charged in the Indictment.  See Opposition at 5.

Lillemoe's Motion seeks unredacted versions of all documents disclosed to the USAO by the USDA.  Memorandum in Support of Lillemoe's Motion ("Lillemoe's Memorandum") (Doc. Nos. 85-1 (unsealed) & 86-1 (sealed)) at 7-13.  Calderon's Motion seeks five specific categories of Brady material in possession of the USDA, and also seeks a bill of particulars regarding the non-defendant transactions.  Calderon's Memorandum at 14-19.  Zirbes' Motion joined in these requests and, in her Reply to the Government's Opposition ("Zirbes' Reply") (Doc. No. 94) at 2-6, Zirbes argues that, should the United States prove up the non-defendant transactions at trial, it would constructively amend the Indictment or, alternatively, that such evidence would be an impermissible variance of proof.

## III.   DISCUSSION

As an initial matter, Lillemoe's Motion has been mooted by the United States' disclosure of unredacted versions of the documents requested.  To the extent that

Zirbes' Motion sought the same relief as Lillemoe's, see Zirbes' Motion at 1-2, it too is now moot.  Similarly, the United States' representations in its Opposition and at oral argument concerning the non-defendant transactions have mooted his request for a bill of particulars.  Consequently, Calderon's Motion is terminated as moot to the extent that it seeks a bill of particulars and Lillemoe's Motion and Zirbes' Motion (to the extent that they seek the same relief as Calderon's) are terminated also as moot.  The remainder of this Ruling will address Calderon's specific Brady requests and Zirbes' contention that the government has either constructively amended the Indictment or seeks to vary the proof in a manner prejudicial to the defendants.

> A.     Calderon's Specific *Brady* Requests

Calderon has sought five categories of evidence, all of which are within the possession of the FAS, that he claims fall within the United States' obligations under Brady v. Maryland, 373 U.S. 83 (1963).  Calderon's Memorandum at 14-16.  In addition to contending that the requested evidentiary material is not "exculpatory" within the meaning of Brady and its progeny, the United States argues that the material sought is not within their possession, and that consequently they are not obligated to obtain, review, and disclose the material.  Opposition at 7-15.  Without ruling on whether the sought-after evidence is, in fact, favorable to the defense, the court denies the Motion on the ground that the material is not in the possession of the USAO, and consequently falls outside its Brady obligations.

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  Such evidence may be

favorable "either because it is exculpatory, or because it is impeaching." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). The prosecution's disclosure responsibilities includes the "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitely, 514 U.S. 419, 437 (1995). If the evidence at issue is not in the possession of the prosecutor, or in the possession of "others acting on the government's behalf in the case," the evidence falls outside the prosecutor's Brady obligations. Id.

In determining whether another government agency is "acting on the government's behalf," a much-cited Eastern District of New York case has explained that "the inquiry is not whether the [USAO] physically possesses the discovery material; the inquiry is the extent to which there was a 'joint investigation' with the other agency." United States v. Upton, 856 F. Supp. 727, 750 (E.D.N.Y. 1994) (citing United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989) ("The prosecutor will be deemed to have knowledge of an access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.")). This "joint investigation" standard has been consistently applied in courts in this Circuit, and the Second Circuit has alluded to it, albeit without a clear statement of the rule. United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (stating that Brady obligations do not extend to government agents that "were 'uninvolved in the investigation or trial'") (quoting United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993)).

In determining whether a "joint investigation" exists for Brady purposes, the Southern District of New York has suggested several factors that a court ought to consider.

> [C]ourts look to whether the agencies are engaged in joint
> fact-gathering, even if they are making separate investiga-
> tory or charging decisions.  Assessing whether a joint inves-
> tigation occurred is a fact-specific inquiry that is best ap-
> proached on a case-by-case basis and involves considera-
> tion of the degree of cooperation between agencies, such as
> their coordination in conducting witness interviews and oth-
> erwise investigating the facts of the case.

United States v. Martoma, No. 12-CR-973 (PGG), 2014 WL 31704, at *5 (S.D.N.Y.

2014) (internal quotation marks and citations omitted).

    The investigation giving rise to the instant Indictment does not present any indicia

of a "joint investigation" between the USDA and the USAO.  In its Opposition and at oral

argument, the United States has represented, and the defendants have not contested,

that the investigation arose after FAS reported concerns regarding an audit of

Calderon's business to the independent investigatory arm of the USDA, the Office of the

Inspector General ("OIG").  An OIG Special Agent, following her own investigation,

reported the case to the Internal Revenue Service ("IRS"), which later disclosed its

investigation to the Federal Bureau of Investigation ("FBI"), which finally discussed the

case with the USAO.  The USAO concedes that the OIG Special Agent is part of the

prosecution team, Opposition at 7 n.4.  However, nothing in the record before the court

suggests that FAS conducted an investigation at all—let alone a joint investigation with

the USAO, as required for documents in possession of FAS to be treated as falling with

the USAO's Brady obligations.  Specifically, the USAO and FAS were not engaged in

joint fact-gathering, did not jointly interview or depose witnesses, and were not in

communication during FAS's investigation.  Indeed, other than the audit that led FAS to

refer the matter to OIG and answering questions propounded to them by the

government or by the defendants through the USAO, FAS has done nothing on its own

6

accord to contribute to the case.  Cf. United States v. Gupta, 848 F. Supp. 2d 491

(S.D.N.Y. 2012) (finding a "joint investigation" for purposes of Brady when Security and

Exchange Commission and USAO attorneys jointly deposed witnesses, shared

memoranda concerning witness interviews, and the SEC commenced its own

investigation before the USAO did).

In short, the FAS and the USAO did not conduct a "joint investigation."

Consequently, the FAS is not a party "acting on the government's behalf in the case,"

Kyles, 514 U.S. at 437, and the United States has no obligation under Brady to produce

material in the possession of FAS, Avellino, 136 F.3d at 255.  Of course, the defendants

can seek, and indeed already have sought, subpoenas compelling production of the

evidence they seek from either FAS or any third parties that may possess the material.

See Fed. R. Crim. P. 17; Defendants' Motion for Subpoenas (Doc. No. 103).

B.    Use of the Non-Defendant Transaction Evidence

In her Reply to the United States' Opposition, Zirbes argues that the United

States' proposed use of non-defendant transactions at trial constructively amends the

Indictment or, alternatively, that proving the uncharged transactions would constitute a

prejudicial variance.  Zirbes' Reply at 2-6.

At oral argument, the United States represented that it will not seek to prove the

non-defendant transactions in their case-in-chief unless the defendants themselves

introduce evidence of those transactions.  Because the United States does not intend to

introduce the evidence in their case-in-chief, without being prompted by the defendants'

use of the transactions (which appears extremely unlikely), the Indictment has not been

constructively amended, and the defendants will not be prejudiced by a variance of proof.[1]  As to this claim, Zirbes' Motion is denied.

## IV.   CONCLUSION

For the reasons set forth above, Lillemoe's Motion For Brady Material (Doc. Nos. 85 & 86) is **TERMINATED AS MOOT**; Calderon's Motion For Disclosure Of Specific Brady Material And A Bill Of Particulars (Doc. No. 87) is **DENIED IN PART** and **TERMINATED AS MOOT IN PART**; And Sarah Zirbes' Motion To Compel Production Of Unredacted USDA Materials And To Require Disclosure Concerning "Other Transactions" Evidence (Doc. No. 88) is **DENIED IN PART** and **TERMINATED AS MOOT IN PART**.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 18th day of April, 2016.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[1] In any event, the court is not necessarily persuaded that the non-defendant transaction evidence, even if introduced at trial, would constitute a "constructive amendment," because the allegations "concern the same elaborate scheme to defraud . . . as was described in the indictment" and they "correspond to" the "starting and ending dates of the [indicted conspiracy]."  United States v. Dupre, 462 F.3d 131, 140 (2d Cir. 2006) (holding that use of uncharged conduct that consisted essentially of different means of committing the same conspiracy charged in the indictment was not a constructive amendment).  Further, the defendants' receipt of information concerning the non-defendant transactions in February, with explanations of their incriminating nature in March, gave the defendants ample time to prepare to defend them at an October trial—assuming the United States intended to introduce them at all—and thus the defendants have suffered no prejudice.