UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL NO. |
| v. | : | 15-CR-25 (JCH) |
| | : | |
| BRETT LILLEMOE, AND | : | |
| PABLO CALDERON, | : | |
| Defendants. | : | AUGUST 11, 2017 |
| | : | |

## RULING RE: BRETT LILLEMOE'S MOTION FOR
## BAIL PENDING APPEAL (DOC. NO. 507)

**I.  INTRODUCTION**

A federal jury found defendant Brett Lillemoe ("Lillemoe") guilty of one count of conspiracy to commit wire fraud and/or bank fraud, and five counts of wire fraud.  See Jury Verdict (Doc. No. 324) at 1–3.  The court denied Lillemoe's Motion for Judgment of Acquittal, or in the Alternative, a New Trial.  See Ruling re: Mot. for J. of Acquittal or, in the Alternative, a New Trial ("Ruling") (Doc. No. 420).  After extensive sentencing hearings, the court sentenced Lillemoe to fifteen months in prison.  See Judgment (Doc. No. 484).  Lillemoe was ordered to self-surrender to the Bureau of Prisons between September 11, 2017 and September 22, 2017.  See id.

Now before the court is Lillemoe's Motion for Bail Pending Appeal and for a Stay of the Forfeiture Order.  Doc No. 507.  The government opposes Lillemoe's Motion, see Mem. in Resp. to Def.'s Mot. for Bail pending Appeal and for a Stay of the Forfeiture Order ("Response") (Doc. No. 514), and Lillemoe filed a reply brief, see Reply Br. in Supp. of Mot. for Bail Pending Appeal and Stay of Forfeiture Order ("Reply") (Doc. No. 515).

For the reasons set forth below, Lillemoe's Motion is granted in part.

## II. LEGAL STANDARD

Lillemoe moves for an order granting bail pending appeal pursuant to Section 3143(b) of title 18 the United States Code. See Br. in Supp. of Mot. for Bail Pending Appeal and Mot. to Stay Forfeiture Order ("Brief") (Doc. No. 507-1) at 3. Section 3143(b) requires that the court order the release of a defendant pending appeal if it finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 1343(b)(1). The Second Circuit has clarified that the requirement that the appeal raise a substantial question does not require a district court to find that its own judgment is likely to be reversed on appeal. See United States v. Randell, 761 F.2d 122, 124 (2d Cir. 1985). Instead, the appeal must raise a question that "is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided another way." Id. at 125 (citing United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985)).

## III. DISCUSSION

A. Bail Pending Appeal

As a preliminary matter, Lillemoe argues that he poses no flight risk nor any danger to the safety of others. See 18 U.S.C. § 1343(b)(1)(A). The government does

2

not disagree. See Response (containing no argument regarding the risk Lillemoe poses). The court agrees that Lillemoe has shown by clear and convincing evidence that he presents no flight risk or danger, and therefore has satisfied the requirement of 18 U.S.C. § 3143(b)(1)(A). Further, there is no indication that the appeal is for the purpose of delay. See 18 U.S.C. § 3143(b)(1)(B).

Lillemoe has raised three grounds for bail pending appeal. While the court is not persuaded that the second or third grounds presented raise a substantial question sufficient to justify bail pending appeal, the court does agree that the first argument, the court's instruction regarding no ultimate harm, does raise a substantial question.

Lillemoe argues that whether the jury instructions regarding "good faith" and "no ultimate harm" were proper in this case is a substantial question. See Br. at 8. The Second Circuit has informed district courts that the "no ultimate harm" instruction should only be given "where (1) there was sufficient factual predicate to necessitate the instruction, (2) the instruction required the jury to find intent to defraud to convict, and (3) there was no evidence that the instruction caused confusion." United States v. Lange, 834 F.3d 58, 79 (2d Cir. 2016). Lillemoe believes that whether there was a sufficient factual predicate to necessitate the instruction presents a close question in this case. See Br. at 8.

Lillemoe's argument is that his theory of defense was not that he did not intend for the banks to ultimately suffer any loss, but rather that he never had any intent for them to suffer any loss at any moment. See id. at 9. Citing his trial testimony, Lillemoe argues that he did not ever contemplate his fraudulent submissions to the banks to cause any loss. See id. at 10. Additionally, he cites to his guarantees to the banks,

3

which made him liable for the entire loan if he engaged in any false or misleading representations, for the argument that had he intentionally committed fraud, he would have been civilly liable for an amount that would have bankrupted him. See id. The implication is that he would not have intentionally engaged in conduct that might have bankrupted him. See id.

While the court does not agree with Lillemoe's characterization of the facts presented at trial and the consequences that would flow therefrom, it recognizes that Lillemoe has raised a "substantial question," within the meaning of the statute and case law, justifying his release pending appeal. Lillemoe argues that there was not a factual predicate justifying the instruction, and thus the question is whether sufficient facts were introduced suggesting that Lillemoe contemplated some immediate loss to the victim, but then planned for the victim to ultimately be made whole. See United States v. Rossomando, 144 F.3d 197, 201–202 (2d Cir. 1998). The unique facts underlying this case, where the defendants were convicted of fraud and conspiracy in connection with securing a USDA guarantee on loans from US banks to a Russian bank which defaulted on those loans during the global financial meltdown of 2007, suggest that the question of whether the instruction was proper in this case is a substantial one, because it is "of more substance than would be necessary to a finding that it was not frivolous." See Randell, 761 F.2d at 124.[1]

---

[1] Lillemoe's Brief cites the court to various "observations" that the court made in connection with its decision to give the "no ultimate harm" instruction. See Br. at 12. The court appreciates the government following the court's order and flagging that these citations did not include the instructions that the court ordered the parties to include with citations to "observations" to the court. See Resp. at 7 n.1. The court does not agree with the characterization made by Lillemoe in his reply that the discussion regarding the difficulty of the question of whether to give the "no ultimate harm" instruction was part of the court's ruling on that issue. See Reply at 6. Further, the court warns Lillemoe against violating the court's Order again in further filings, with this court or the court of appeals.

The court remains persuaded, however, that the instruction was proper because the court believes that Lillemoe's evidence does not show that he never intended the banks to suffer a loss. First, the argument that Lillemoe's personal guarantees indicated that he had no intent to defraud the banks because, as his lawyer put in closing, "saying he had an intent to defraud CoBank or Deutsche Bank would be like saying he had an intent to bankrupt himself," assumes that he would be willing or able to make good on his guarantee. See Br. at 10. In other words, had the banks suffered a loss on the loans, and determined to sue Lillemoe based on the guarantees, the banks would have suffered a loss, and only through Lillemoe's guarantee—were he able to repay the entire loan—would the bank <u>ultimately</u> be made whole. This suggests not that Lillemoe never intended to cause a loss and thereby defraud the banks, but rather that he planned for the banks to be made whole if they suffered a loss, thereby justifying the "no ultimate harm" instruction.

Second, although Lillemoe testified that he never intended a loss, the court believes that this alone does not make the "no ultimate harm" instruction improper. <u>But see</u> <u>Rossomando</u>, 144 F.3d at 202 ("Here, however, the essence of Rossomando's defense was not that he thought the Pension Fund would not 'ultimately' lose money, but that he thought it was <u>never</u> going to lose money . . . ."). Again, however, on the facts of this case, the court recognizes the difficulty of the question presented regarding the "no ultimate harm" instruction. Therefore, although the court remains convinced that the jury charge was proper, it also agrees that Lillemoe has presented a substantial question as required by section 1343(b)(1)(B). See <u>United States v. Perrotti</u>, No. 3:14-CR-215 (JAM), 2016 WL 6987069, at *2 (D. Conn. Oct. 25, 2016) ("Although I continue

5

to believe that the instruction I gave was proper, I think there is a reasonable ground for a difference of opinion on this issue").

The final prong of the analysis is whether a contrary ruling by the Second Circuit would be likely to result in, inter alia, reversal or an order for a new trial. See 18 U.S.C. § 1343(b)(1)(B). The government does not challenge Lillemoe's assertion that, if on review the jury instruction is found to have been improper, it would likely result in an order for a new trial. See Br. at 13–14; Resp. at 4–5. The court agrees with Lillemoe that Rossomando indicates that an improperly-given "no ultimate harm" instruction would likely result in an order for a new trial. See Br. at 14 (citing Rossomando, 144 F.3d at 199) (discussing how Rossomando reversed and remanded for a new trial even under the plain error standard). As "[a]n erroneous instruction, unless harmless, requires a new trial," the court is persuaded that, if the Circuit found the instruction to have been given in error, it would likely result in a new trial. See United States v. Bah, 574 F.3d 106, 114 (2d Cir. 2009).

For the foregoing reasons, Lillemoe's Motion for Bail Pending Appeal is granted in part.

### B. Stay of Forfeiture Order

Lillemoe also moves for a stay of the Forfeiture Order. See Br. at 31–32. This court may stay the order of forfeiture "on terms appropriate to ensure that the property remains available pending appellate review." Fed. R. Crim. P. 32.2(d). "The purpose of the provision is to ensure that the property remains intact and unencumbered so that it may be returned to the defendant in the event the appeal is successful." Advisory Comm. Notes to Fed. R. Crim. P. 32.2(d). District courts in this Circuit have generally considered four factors in determining whether to stay a forfeiture order pending appeal;

6

"1) the likelihood of success on appeal; 2) whether the forfeited asset is likely to depreciate over time; 3) the forfeited asset's intrinsic value to defendant (i.e., the availability of substitutes; and 4) the expense of maintaining the forfeited property." United States v. Silver, 203 F.Supp.3d 370, 385 (S.D.N.Y. 2016) (collecting cases).

The court does not agree that Lillemoe is likely to succeed on appeal, for the reasons stated above and those in its Ruling on the Motion for a Judgment of Acquittal. See Ruling. Beyond the first factor, Lillemoe's main concern is that, although the Forfeiture Order only orders forfeiture of money, it permits the government to move to substitute other property. See Forfeiture Order (Doc. No.479). His concern is that the government may move to substitute his real estate holdings in order to satisfy the Forfeiture Order, which would cause irreparable harm to him by removing his sole source of income. See Br. at 32. The government responds that it is only seeking a money judgment, and so the factors do not justify a stay of the Forfeiture Order. See Resp. at 8.

The court appreciates Lillemoe's concern, which is buoyed by the fact that, as represented in the personal financial statement submitted in connection with the Presentence Investigation Report, Lillemoe does not have sufficient liquid assets to satisfy the Forfeiture Order. See Doc. No. 474-1. Thus, even though the Forfeiture Order is a money judgment forfeiture, the court understands Lillemoe's concern that any attempt by the government to seek forfeiture of the full amount would likely involve an attempt to seek forfeiture of his real estate holdings. The court will therefore consider the second, third, and fourth factors as they concern Lillemoe's other holdings.

There is no evidence that the property is likely to depreciate over time; Lillemoe represents the value of his property has instead increased over time. See Br. at 32. Additionally, the real estate holdings have intrinsic value to Lillemoe, in that they represent his sole source of income. See id. Finally, he represents that maintaining the property involves some expense, though not a significant one over the expected duration of the appeal process. See id. Thus, at least as to the real estate holdings, the second and third factor point in favor of a stay, while the first and fourth do not.

The court, recognizing its discretion in this matter, grants in part Lillemoe's Motion to Stay the Forfeiture Order. However, in order to ensure that the property remains available in the event his appeal is unsuccessful, he is prohibited from further transferring or encumbering his real estate assets, and must refrain from dissipating those assets. See Silver, 203 F. Supp. 3d at 386 (granting a stay of a forfeiture order of cash and securities in part, while prohibiting encumbering, transferring, or otherwise dissipating the assets).

## IV. CONCLUSION

For the foregoing reasons, Lillemoe's Motion for Bail Pending Appeal and Stay of the Forfeiture Order (doc. No. 507) is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 11th day of August, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

8