UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. |
| v. | : | 15-CR-25 (JCH) |
| | : | |
| BRETT LILLEMOE AND | : | |
| PABLO CALDERON, | : | |
| Defendants. | : | SEPTEMBER 11, 2017 |
| | : | |

**RULING RE: GOVERNMENT'S THIRD AMENDED MOTION FOR ENTRY OF A RESTIUTUTION ORDER (DOC. NO. 472)**

**I.   INTRODUCTION**

On June 13, 2017, defendants Brett Lillemoe ("Lillemoe") and Pablo Calderon ("Calderon") were each sentenced.  As part of the Judgments against them, Lillemoe and Calderon were each ordered to pay restitution jointly and severally with each other, in an amount to be determined.  See Judgments (Doc. Nos. 484, 488).

The government has moved for entry of a restitution order in the amount of $18,872,998.38.  See Gov.'s 3d Am. Mot. for Entry of Restitution Order ("Restitution Motion") (Doc. No. 472).   This amount includes $371,645.38, payable to CoBank and $18,501,353, to the United States Department of Agriculture ("USDA").  See Schedule A (Doc. No. 472-1) at 6; Schedule A (Doc. No. 472-2) at 6.

**II.   LILLEMOE'S OPPOSITION**

Lillemoe argues that the court should deny the government's request for restitution to the USDA because there was no causal connection between the defendants' conduct and the supposed loss to the USDA.  See Defs.' Br. in Opp'n to Gov.'s Mot. for Entry of a Forfeiture Order and Gov.'s Am. Mot. for Entry of Restitution Order ("Defs.' Br.") (Doc. No. 446) at 26.  He also argues that the USDA is not a "victim"

1

for purposes of restitution. Id. In addition, he contends that the government's request for CoBank's attorney's fees should be reduced. See Lillemoe's Opp. to the Gov.'s 3d Am. Mot. for Entry of Restitution Order ("Lillemoe's Opposition") (Doc. No. 503). Finally, he argues that the amount of restitution should be reduced or made on a schedule, rather than immediately, due to his limited earning ability. See Defs.' Br. at 30.

For the reasons that follow, the court rejects Lillemoe's arguments regarding restitution to the USDA and adjusting the government's proposed restitution schedule, and grants his request to reduce CoBank's legal fees.

    A.    <u>Restitution to the USDA</u>

Lillemoe argues that there was no causal connection between the defendants' conduct and the supposed loss to the USDA. See Defs.' Br. at 26–27. The court has already addressed this argument at great length in various proceedings. See e.g., Sentencing Tr. at 38:10–19 (June 12, 2017); 39:5–15 (June 12, 2017); 881:20–23 (June 13, 2017). At a sentencing hearing on April 5, 2017, it found the following:

> I find it foreseeable that the defendants' fraud would cause the U.S. banks 100 percent of the loss if the foreign bank defaults on the loan. Even though that loss is temporary, it still existed and it still awaited a decision by the USDA to reimburse. Now, the argument, of course, was made that that was automatic, it happens very quickly. But I also remember testimony, which I credit, that there was a process. The paperwork was reviewed and a decision was made before the button was pushed to send, I don't know, five and a half million dollars to CoBank or to Deutsche Bank.

Sentencing Tr. at 627:6–18 (April 5, 2017). Section 3664(f)(1)(A) provides that, "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." It is clear "that the defendants were both

2

but for and the proximate cause of the [$18.5 million] loss that resulted from the loans that the defendants arranged . . . " Id. at 635:7–9 (April 5, 2017). The bank victims clearly lost, in the context of the MVRA, over $18.5 million. Further, without addressing whether the USDA was a "victim" itself under the MVRA,[1] it is entitled to an order of restitution after reimbursing the banks in the GSM-102 program that lost money due to the defendants' conduct. See 18 U.S.C. § 3664(j)(1) ("If a victim has received compensation from insurance or any source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation.") Having paid 98 % of the bank losses suffered as a result of defendants' conduct, the USDA is entitled to an order of restitution in that amount, which is $18,501.353. See United States v. Douglas, 525 F.3d 225, 253–54 (2d Cir. 2008); United States v. Cuti, No. 08-cr-972 (DAB), 2016 WL 4544062, at *2 n.4; United States v. Skowron, 839 F. Supp. 2d 740, 747 (S.D.N.Y. 2012).

    B.          Restitution to CoBank

The government's request for restitution in the amount of $371,645.38, payable to CoBank, includes $137,422, as restitution for CoBank's losses and $234,223.38, as restitution for CoBank's costs and attorneys' fees incurred in connection with the investigation and prosecution of the case. See Schedule A (Doc. No. 472-1) at 6; Schedule A (Doc. No. 472-2) at 6. CoBank desired not to share its underlying invoices with the defendants, in accordance with section 3664(d)(4) of title 18 of the United States Code. See Restitution Mot. at 1; 18 U.S.C. § 3664(d)(4). The court suggested that these invoices could be made available to the defendants for review only by their

---

[1] See court's findings at Sentencing Tr. at 617:1–5; id. at 621:1–15; id. at 627:6–18.

3

attorneys, a suggestion to which the government agreed.  See Sentencing Hr'g of June 13, 2017 (Doc. No. 493) at 833:18–884:7.  After his attorneys reviewed the invoices, Lillemoe objected to the amount of restitution that the government had moved for, arguing that the amount should be lowered by $65,902.05.  See Lillemoe's Opposition.  The government did not reply to this Objection.

After reviewing Lillemoe's Opposition, the court agrees that the amount of costs and fees should be reduced by $65,902.05, because those fees were not necessary as required by the statute and Second Circuit case law.  See United States v. Amato, 540 F.3d 153, 159–60 (2d Cir. 2008).  Specifically, the court agrees that, although CoBank was entitled to have counsel to prepare its representative for her testimony, it was not necessary for CoBank's counsel to travel back and forth from Washington, D.C., to New Haven to attend trial daily and provide detailed summaries of all witness testimony and trial updates.  See Opp. at 3.  The government has not shown by a preponderance of the evidence that the fees incurred by CoBank after its witness testified were necessary, or "expenses the victim was required to incur to advance the investigation or prosecution of the offense."  See United States v. Cuti, 778 F.3d 83, 94 (2d Cir. 2015).  Similarly, the fees incurred in connection with the FOIA litigation were not associated with the criminal investigation and therefore are not included in the Restitution Order.  See Opp. at 2 n.2.

Thus, the amount of restitution requested by the government to be paid to CoBank will be reduced by $65,902.05, to an amount of $305,743.33.

    C.    <u>The Amount and Schedule of Restitution</u>

Lillemoe argues that the court should consider his financial needs and earning

4

ability when setting the amount of restitution. See Defs.' Br. at 27. He also argues that the court should permit the defendants to make scheduled payments instead of requiring an immediate payment. See id. at 30.

Under the Mandatory Victims Restitution Act, restitution is mandatory for victims of certain crimes, including "an offense against property . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). The court "shall order restitution to each victim in the <u>full amount</u> of each victim's losses as determined by the court and <u>without consideration of the economic circumstances of the defendant</u>." 18 U.S.C. § 3664(f)(1)(A) (emphasis added). Thus, the court does not consider Lillemoe's financial needs and earning ability when determining the amount of restitution. See <u>United States v. Harris</u>, 302 F.3d 72, 75 (2d Cir. 2002) ("When restitution is mandatory, the amount of restitution can only be challenged on the ground that it does not reflect the losses to victims."); <u>see</u> also, <u>U.S. v. Lino</u>, 327 F.3d 208, 210 n.2 (2d Cir. 2003).

However, in determining the manner in which, and the schedule according to which, the restitution is to be paid, the court must consider: "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2). Lillemoe asks the court to consider that he can no longer engage in his structured finance business and the struggles his rental property business is experiencing. He also states that he supports his wife and two minor children. Lillemoe requests that the court order payments on a schedule, rather than all at once, but he does not propose a specific restitution schedule. See Defs.' Br. at 30.

5

After considering the factors under 18 U.S.C. § 3664(f)(2), the court finds that the government's proposed restitution schedule is appropriate. Lillemoe's Pre-Sentence Report shows that he has a net worth of more than $7 million, including notes worth $650,000 and ownership interests in five properties, including a ski condo in Breckenridge, Colorado, and many partnerships. Second Addendum to the PSR (Doc. No. 474-1); Lillemoe Am. PSR at ¶ 124 (Doc. No. 481). While liquidation of a substantial portion of his assets will obviously affect his lifestyle, the court is not persuaded that his household will not be supported (albeit not at the level it was during the time period in question in this case) by his wife's income and assets. In addition, the government's proposed schedule—10 % of gross income per month or $1,000, whichever is greater—accommodates Lillemoe's uncertain future earning capacity through the installment payments that will ensue as to the remaining restitution after Lillemoe has paid over 85 % of his liquid assets.

### III. CALDERON'S OPPOSITION

#### A. Restitution to the USDA

Calderon argues that no restitution is owed the USDA because the defendants did not mislead the CCC on the nature or the details of what were legitimate third party transactions. See Calderon's Mem. in Opp. to Gov.'s Mot. for Entry of a Forfeiture Order and Am. Order of Restitution (Doc. No. 447) at 18–19. As stated above with respect to Lillemoe's arguments about restitution to the USDA, the court has already decided this issue and will enter a restitution order for the USDA.

#### B. Restitution Schedule

Additionally, Calderon has moved that the court adopt a restitution schedule that would only require him to convert to cash 60 % of his liquid assets, excluding the family

home, and thereafter pay any unpaid restitution at a rate of 15 % of his gross income per month.  See Calderon's Mot. in Opp. to Gov.'s Proposed Restitution Schedule ("Calderon's Opp.") (Doc. No. 516).[2]  Calderon maintains that nearly all of his assets are jointly owned by his wife, whose future earning ability is highly uncertain and that Calderon has significant financial obligations, such as medical bills and dependent children.  See Calderon Opp. at 3–4.

The government responds that, because the judgment provided that restitution is payable immediately and because a statutory lien is created upon the imposition of an order of restitution, the government is already entitled to Calderon's assets.  It further argues that the proposed order is merely a liquidation order that the government requests "in an effort to avoid the delay of collection litigation."  See Gov.'s Resp. to Calderon's Opp. (Doc. No. 527) at 1–3.[3]  The government notes that Calderon's wife could interpose a third party claim on any jointly held assets according to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 et seq., and therefore Calderon's Opposition does not cite a sufficient reason to modify the government's proposed schedule.  See id. at 3–4.

The court concludes that the statutory factors, see supra at 4–5, favor the government's proposed restitution payment schedule, including the liquidation portion. See 18 U.S.C. § 3572(d)(2) (requiring that the payments must be set out in the "shortest time in which full payment can reasonably be made"); 18 U.S.C. § 3664(f)(2) (listing

---

[2] The court understands Calderon's proposal to mean that he will liquidate 60 % of his assets and pay that toward restitution, and then pay 15 % of his gross income per month for unpaid restitution.

[3] While the court ordered restitution at sentencing, the court has yet to enter a Restitution Order, which, according to section 3664(f), must set out both the final amount of restitution and the manner and schedule in which payments are to be made.  See 18 U.S.C. § 3664(f).

7

factors to be considered).

Calderon reports a net worth of over $3 million.  See Financial Statement (Doc. No. 396-5) at 7.  As Calderon has been unemployed since 2010, he claims much of the family assets come from his wife.  See Calderon's Opp. at 3.  However, he does not provide the court with adequate information to support this argument; his financial statement indicates that his credit cards are joint and two bank accounts are his wife's, but does not indicate how any other asset or liability is held, let alone obtained.  See Financial Statement at 1–7.  If much of the assets are owned solely by his wife, they will not be liquidated under the proposed government restitution order because they are not "his" liquid assets.[4]  Further, if any jointly owned liquid assets exist due in part or whole to his wife's contribution, she has a right to challenge the liquidation of her part or interest.[5]  Thus, the first statutory factor is unclear, because the court cannot determine which assets are his or jointly held and which are not, and because his wife has a right to contest liquidation/payment of her assets.  Given that, it certainly does not weigh in favor of Calderon's proposal.

Any difficulty in predicting Calderon's future earning ability under the second factor does not support Calderon's proposed restitution schedule.  See United States v. Lino, 327 F.3d 208, 210 (2d Cir. 2003) (finding that the court must often engage in guesswork in estimating the defendant's resources in the future and "that it is better to

---

[4] This is not to say that, at a later date, the government might not pursue his wife's assets if it has a legal basis to claim they are Calderon's assets.

[5] The Federal Debt Collection Procedures Act provides that co-owners and other persons interested in property subject to a writ of execution have a right to receive notice of and to challenge the levy.  See 28 U.S.C. §§ 3202(b)–(c) ("FDCPA").  The Act requires the court to adjudicate any third-party claims and determine whether the judgment debtor has a "substantial nonexempt interest."  See United States v. Coluccio, 51 F.3d 337, 341 (2d Cir. 1995) (quoting § 3203(a)).

impose restitution obligations that the defendant will be unable to meet than to let the victim go uncompensated while the defendant retains newly acquired wealth.") The Government's proposed payment schedule calls for a 10 % payment of gross income, or $1,000, whichever is greater.[6] Consequently, if he has less than $10,000 per month income, Calderon faces a monthly payment of $1,000, which is subject to adjustment based on future circumstances. Thus, the schedule accommodates a situation where Calderon receives little or no income going forward.

Finally, Calderon has not provided details about his financial obligations that could lead the court to decide the third factor in his favor. While his wife faces a serious medical condition, Calderon has not given the court information in that regard about what his current debts are, and what they will likely be in the future. Further, he has not provided the court with information, e.g., whether his wife is covered by medical insurance, what if any deductibles the family may have to pay, and whether his wife will be covered by sick leave or has a disability policy while she is away from work. In the absence of such information, the court is left to speculate about what those obligations might be.

In consideration of Calderon's financial resources, as well as his financial obligations, including those to non-minor children, the court orders that he liquidate 85 % of his liquid assets to pay as restitution and that he pay the remaining amount at a rate of no less than 10 % of his gross income per month, or $1,000, whichever is greater.

---

[6] Calderon's proposed restitution schedule called for 15 % or $1,000, whichever is greater.

## IV. CONCLUSION

For the foregoing reasons, the government's Third Amended Motion for Entry of Restitution Order is **GRANTED IN PART**.  A Restitution Order will enter consistent with this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 11th day of September, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge